Jones *v.* Hoyt.

## JONES *vs.* HOYT.

In a bill of lading of lumber, which was to be transported, by a shipmaster, from B to S, a stipulation was inserted, that such lumber should be measured on the deck of the vessel, at S, and freight settled according to that measurement. The consignee at S, having died, prior to the arrival of the consignment, and no agent of the owner appearing to assist in the measurement, a portion of the lumber, before any part of it had been measured, was removed from the vessel, properly piled and measured on the wharf, all which was done in a reasonable manner. Held, that, notwithstanding such stipulation, the plaintiff was entitled to freight upon the whole of said lumber.

Where such lumber was sold by the plaintiff, at a public auction, in pursuance of a provision in said bill of lading, at which the plaintiff purchased the same, through the agency of a third person, it was held, that such pretended sale was void, and that the plaintiff continued to hold said lumber, as the property of the defendant.

Therefore, where the plaintiff subsequently sold said lumber, at a great advance on the price of such pretended purchase, it was held, that he was bound to account to the owner, for the same, at such advanced price.

THIS was an action on the case, tried before the jury, on the general issue, at the term of the superior court for the county of Fairfield, holden in October, 1853.

The plaintiff's declaration alleged substantially, that, on the 7th day of January, 1850, the defendant contracted with the plaintiff, as master of the bark called the Z. Ring, to transport a certain quantity of lumber from the city of New York, to the city of San Francisco, in California, upon the terms specified in a bill of lading of that date, of the form following, to wit: " Shipped, in good order and condition, by James H. Hoyt, on board the bark, called the Z. Ring, whereof Townsend Jones is master, now lying at the port of New York, and bound for San Francisco, to say:

2,074 pieces of dressed pine boards,

    697   do.    rough  do.    do.
    350   do.    hemlock timber,
    500   do.        do.       do.

being marked and numbered as in the margin, and are to be

delivered, in the like order and condition, at the port of San Francisco, the danger of the seas only excepted, unto Aaron Dean or his assigns, he or they paying freight for the same, at the rate of fifty-eight dollars per M. feet, eighty-three and one-third cubic feet being taken for a thousand, with primage and average accustomed. In witness whereof, &c.

" Dated at New York, the 7th day of January, 1850, T. J."

That, across the face of said bill of lading, and constituting a part thereof, were written the words, " The lumber to be piled and measured on the deck of the vessel, and freight settled according to that measurement; the expense of the same to be paid equally by the vessel and the consignee," and upon the margin of which bill of lading, and constituting a part of the same, were the words following, to wit: " Bark to have the privilege of one or more ports for refreshments, number of pieces unknown, all on board to be delivered. Freight payable in specie, or its equivalent, before delivery of the goods, and to be received by the consignee, within reach of the vessel's tackle, when the vessel is ready to deliver them, and if not taken within ten days after arrival of the vessel, the master to be at liberty to land the same at the expense and risk of the goods, and to sell sufficient to pay all charges; not accountable for splits or breakage."

That, to induce the plaintiff to undertake said voyage, and to convey said lumber from New York to San Francisco, the defendant wrote upon the back of said bill of lading, before it was to take effect, the words following, to wit: " I guarantee the payment of the within named freight," and subscribed the same with his own hand; and thereby, in consideration of the obligations and liabilities assumed by the plaintiff, according to the provisions of the said bill of lading, on said 7th day of January, 1850, assumed and faithfully promised the plaintiff, that if he would, in a reasonable time, proceed with said lumber from said port of New York to said San Francisco, and dispose of the same in the manner specified in said bill of lading, including the part contained

on the face and the margin thereof, that he should receive of said consignee, or from the avails of the sale of said lumber, if not taken by said consignee in the manner specified in said bill of lading, the full amount of the freight that would be due to said plaintiff, according to the terms of said bill of lading, and that the defendant would pay to the plaintiff, when thereto requested, the amount of said freight, or so much thereof as should remain unsatisfied.

The declaration then alleged, that, on the arrival of the vessel at San Francisco, said consignee was dead, and the plaintiff was notified, by the defendant, that one William Lockwood was authorized to receive said lumber, to assist in the measurement thereof, and pay the freight which should be then ascertained to be due to the plaintiff; but that said Lockwood utterly refused so to do: nor did any other person appear to receive the same for the defendant. Whereupon the plaintiff caused a protest to be made by a notary public, at said San Francisco, against said Hoyt, Lockwood, and all others whom it might concern, for costs and damages, which should accrue by reason of the premises. That he caused said lumber to be measured according to said bill of lading, and ascertained thereby that the quantity was fifty thousand feet, the freight of which was, including primage, $3,045, pursuant to said bill of lading. That he waited, until more than ten days had elapsed after he had called on the said Lockwood, when he caused said lumber to be sold at public auction, and that the amount of said sales, deducting necessary charges and expenses, was only the sum of $1,700; of all which the defendant, on or about the 25th day of December, 1850, had notice, &c.

On the trial, it was admitted that the plaintiff transported said lumber to San Francisco, as alleged in the declaration. Before his arrival there, the consignee died, and said Lockwood did not receive said lumber, nor did any one else appear to receive said lumber or pay the freight, although the plaintiff took all reasonable measures to find some person,

who had right and authority to receive the same, and thereupon the plaintiff caused protest to be made, as alleged in the declaration. The plaintiff caused a portion of said lumber to be placed upon the dock, or wharf near which said vessel lay, and the remainder was stowed on said vessel; said lumber was measured, while a part of it lay on said wharf, and a part on the deck of said vessel, and the whole was not measured before.

The plaintiff offered evidence to prove that, as no consignee, nor any person on behalf of the defendant, appeared, to aid in the measuring of said lumber, he found it most convenient to cause a portion of it to be piled and measured on said wharf, and that said lumber was properly piled, and the whole of it properly measured.

The defendant requested the court to charge the jury, that it was the duty of the plaintiff to have measured said lumber on board of said vessel, according to the stipulations of the charter party, and as the whole of it was not so measured, the plaintiff was not entitled to recover. The court instructed the jury, that, as no consignee nor other person on behalf of the defendant, appeared, to assist in measuring the lumber, if the plaintiff acted reasonably, under the circumstances, in removing, piling and measuring a part of said lumber upon said wharf, he might recover, notwithstanding the whole was not measured on board said vessel.

It was agreed, that the plaintiff caused notice to be published, in one or more public newspapers in San Francisco, that said lumber would be sold at public auction, at a time and place specified, to pay freight and charges, and that, accordingly, said lumber, at said time and place, was sold at public auction, by the procurement of the plaintiff, for the purposes aforesaid, and that the plaintiff procured one Slate to bid in said lumber for him, and on his account, and authorized him to bid $50 per thousand feet, if necessary, and that said lumber was set up for sale at said auction in one parcel only, and was bid off by said Slate for and on account

of the plaintiff, and who was the highest bidder, for $35 per thousand feet; and the plaintiff took and retained possession of the same, having paid the charges of sale.

The plaintiff admitted, that he remained in San Francisco, for some time, to make sale of said lumber on his own account, and sold a considerable portion of the same, at retail or in parcels, for a much higher price than $35 per thousand; but he introduced evidence to prove, that said lumber, when sold, was not worth in San Francisco, as an entire cargo, more than $35 per thousand feet, and no more could be obtained for it, in that market, and he claimed that he had acted reasonably, in making said sale, and was not liable to account to the defendant for more than said sum of $35 per thousand feet.

The defendant claimed, that the plaintiff had not acted reasonably, nor according to commercial usage, in disposing of said lumber, that said auction sale was void, and that the plaintiff was bound to remain in said port of San Francisco a reasonable time, for the purpose of making sales of said lumber, for his own and the defendant's benefit, in parcels, and was bound to use reasonable diligence to sell said lumber, at the highest prices which could be obtained for it, and was liable to account to the defendant, for such sums as said lumber could have been sold for, by the use of due and reasonable diligence. And he offered evidence to prove, and claimed that he had proved, that, by selling said lumber in smaller parcels, to different persons, he could have obtained much more for the same, than $35 per thousand feet, and more than enough to pay all his demands for freight and charges, and he prayed the court to instruct the jury accordingly.

The plaintiff offered evidence to prove, and claimed that he had proved, that, when he arrived at San Francisco, and during his stay there, labor was worth five dollars per day; that his seamen all deserted on his arrival there; that the charge for wharfage was five dollars per thousand feet, and

all other expenses for storage either in vessels or on shore, were very high; and he claimed, that he had conducted reasonably in all he did, and that said auction sale was fair and legal.

But there was no evidence offered, to prove how much the plaintiff had expended, by reason of his stay in said port, either for wharfage or other charges, nor what sum should be paid or allowed for the detention of his vessel in said port.

The court charged the jury, that, if said auction sale was made by the plaintiff, and for his benefit, as the defendant claimed, and that if said Slate, in bidding at said auction, and in buying in said lumber, at $35 per thousand feet, acted as the agent of the plaintiff and for his benefit, said sale was void. Also, that the plaintiff having transported said lumber to San Francisco, according to the terms of the charter party, and no consignee appearing to receive said lumber and pay said freight, and said freight not being paid, the plaintiff had a lien upon said lumber for the same. That the plaintiff was only bound to act reasonably, under the circumstances, and was not bound to procure storage on shore for said lumber, and was not bound to remain in the port of San Francisco, with his vessel, for the purpose of waiting for or finding purchasers of said lumber, nor to wait there that he might *sell the same at retail or in parcels;* but had, under such circumstances, a right to retain the possession of said lumber, and was bound only to account to the defendant, to be applied upon his claim for freight, for the actual value of said lumber as it then was at said port. Also that the plaintiff was not bound to account to the defendant, for the lumber which he afterwards sold as aforesaid, at the prices he received for said several parcels; at any rate, not without deducting from the same all reasonable charges, and expenses on account of the same, and of the amount of which, no proof was offered.

The jury having returned a verdict for the plaintiff, the

defendant moved for a new trial, on the ground that the court erred, in omitting to charge the jury as requested by him, and in the instructions given as aforesaid.

*Dutton* and *Ferris*, in support of the motion, contended,

1. That the plaintiff could not recover, because the timber was measured on deck. Nothing was shown, which dispensed with that condition; if the presence of the consignee was contemplated, his death had no other effect than to render a measurement on deck, not in his presence, sufficient. Abbott on Ship., 270, 268. ·3 M. & Sel., 267. Aleyn, 26. 19 E. C. L. R., 393. Chitt. Con., 735, and note.

2. That, under the circumstances, the plaintiff was, as he claimed to be, the defendant's agent. ˙ Abbott, 16, (122,) n. 3 Kent's Com., 312. Abbott, 11, 12.

The sale he made was confessedly illegal. *Barker* v. *Marine Ins. Co.*, 2 Mason, 369. 8 Conn. R., 145. Consequently, the goods remained in the hands of the defendant, and, as agent, he was, of course, accountable. *Franks* v. *Stivers*, Add., 47. 9 Wheat., 362.

3. That the court should have instructed the jury, in direct terms, that the plaintiff was bound to account for the sales, and if there were expenses, it was for him to show them. Although the plaintiff had a lien upon the property, that did not authorize him to take it to himself; only to sell it according to law.

*Hawley* and *Minor*, contra, contended,

1. That the measurement of the lumber upon the deck of the vessel, by a fair construction of the agreement, was not a condition, precedent to the plaintiff's recovery; it was a mere mode of ascertaining the quantity. The strict performance was impossible, as both parties were to be present, and the consignee was dead. It was a provision for the convenience of the plaintiff, and he could waive it. The court could not charge the jury, as the defendants claimed that it

should, that there could be no recovery, unless all the lumber was measured on the vessel, for the plaintiff would, at least, be entitled to recover for the part that was measured on the deck.

2. The charge, as to the extent of the plaintiff's liability, was correct. For a tortious appropriation of property, the value is the extent of the damages. A higher responsibility surely, cannot be claimed, for a mere neglect of duty, or failure to fulfill a contract. Where an agent fails to obey express instructions, the value of the property is the extent of the rule. *Bell* v. *Cunningham*, 3 Pet., 69, 85.

In authorities, referred to by the defendant, the agents sought to avoid a liability; therefore, they were not applicable to a case, where the agent was charged with the full value of the property.

HINMAN, J. We think the ruling at the circuit correct, in regard to the measurement of the lumber. The object of inserting in the bill of lading a stipulation, that it should be measured on the deck of the vessel, is a little doubtful. It would seem that the owner could have no interest in the plan of measurement; and, as the instrument was not signed by him, but by the plaintiff alone, it is probable, that the clause was inserted rather for his own than for the shipper's benefit. He might think it important to have the lumber measured before it left his ship, that there might be no danger of its being taken from his possession, before the freight was paid. If this was the object, then it would seem, that the plaintiff would have power to waive its strict performance. If, however, the stipulation was for the mutual benefit of both parties, or was inserted for that purpose, it was done to enable them both to be present and see to its correct measurement, and after the death of the consignee, there being no other agent of the owner in a condition to see it measured, the plan of measurement was rendered wholly immaterial. The defendant could not be present by any other agent than

the plaintiff himself, and, whether he measured it on the deck of his vessel, or after he had placed it on the wharf, was quite immaterial. No doubt, the parties might make the place of measurement, or the mode of unloading the vessel, a condition precedent to the right to recover freight, whether there was any object, or any materiality in the stipulation or not; but, in giving a construction to an informal instrument of this description, we do not feel bound by the same strict rules, as we perhaps should be, if we were considering a policy of insurance, or some instrument of a more solemn character.

The charge of the court, in respect to the plaintiff's attempted sale to himself, through the agency of Slate, was correct.

He could not be both vender and purchaser of his principal's property, and the pretended sale to himself was simply void.

On another point we think the court fell into an error, which may have influenced the jury, in their estimate of damages, and a new trial must, therefore, be granted. The motion shows that, subsequently to the attempted sale to himself, the plaintiff disposed of a portion of the lumber, by sales to third persons; and he admitted, that these sales were made at a much higher price than thirty-five dollars per thousand feet. The sale to himself being void, he, of course, continued to hold the lumber as the property of the defendant, and, whether he was obliged to sell it is of no importance,—he did, in fact, sell it, and the question was, what allowance he should make for the defendant's property thus sold. The court charged the jury, that he was only bound to account to the defendant, for the actual value of said lumber, as it then was, at the port of San Francisco; and that he was not bound to account for it, at the prices he received for the several parcels sold by him. This charge seems to us erroneous, under any aspect in which it can be viewed. If the plaintiff was, under the circumstances, the

defendant's agent, to dispose of the property, then he was bound to act reasonably, in such agency, and to account for such sums as the property could have been sold for, by the use of reasonable diligence ; and, as it was admitted that the lumber brought much more than the plaintiff claimed as its fair value, at that place, it seems clear, that he ought to account for it, at what it really brought.

On the other hand, if it be assumed that, in his subsequent sales to third persons, he was acting tortiously, and, without any authority, was disposing of the defendant's property, the defendant would still have the right to affirm the sales, as made for his benefit, and to claim the amount which the property brought.

It is true, the defendant did not claim that the court should instruct the jury, that the plaintiff must account for such portions of the lumber as he sold to third persons, at the prices which he actually obtained for it, and, had the court omitted to give any instruction on the subject, the only point would have been, whether there was any error, in omitting to instruct them, that the plaintiff was bound to obtain the highest price for which the lumber could be sold in parcels; had the court merely omitted to make the charge claimed by the defendant, we should have had more doubt, in respect to the granting a new trial ; but, as the jury may have been misled by the instruction which was given, the only course which can be taken is to grant a new trial.

In this opinion the other judges concurred, except CHURCH, C. J., who was disqualified.

New trial to be granted.